Your Honor, the final case on the docket this morning is 2-23-0352, in read of the marriage of Becky R. Hyman, constitutional appellee, and Rachel D. Hyman, respondent appellant. Arguing on behalf of the appellant, Mr. Matthew P. Elster. Arguing on behalf of the appellee, Mr. Eric J. Schwab. Thank you. Mr. Elster, you may proceed. Thank you, Your Honor. Good morning, Your Honors. Counsel, may it please the Court. My name is Matthew Elster of Bierman, LLP, on behalf of the respondent appellant, Rachel Hyman. In early 2022, following a two-day trial, Justice, excuse me, Judge Lombardo of the Lake County Circuit Court granted my client's petition to enforce the parties' marital settlement agreement, ordering Mr. Hyman, the appellee, to pay my client approximately $130,000 pursuant to an undisclosed asset provision found in the parties' marital settlement agreement. A year and a half ago, I appeared before Justice Shostak and Justice McLaren and argued in support of that judgment. Your Honors issued a published opinion affirming it. And following that affirmance, my client sought fees before the trial court, before the Honorable Ari Fix, as Judge Lombardo was no longer presiding over this matter. Justice Fizz made the necessary finding that Mr. Hyman's conduct lacked a compelling cause or justification to warrant 508B fees under Section 508B of the Illinois Marriage and Dissolution of Marriage Act, but ordered the reduced sum of $10,000 for trial court fees and the sum of $0 for fees associated with Ms. Hyman's successful defense of Mr. Hyman's appeal. I'm here today before Your Honors representing the Appellant because I believe Justice Fizz erred in three matters. First, by finding that Rachel's trial counsel, who successfully enforced the parties' MSA, were only entitled to 17% of the fees that they incurred. That 50 minutes of every hour that they spent successfully defending their client's rights were either unreasonable or unnecessary. Go ahead, I'm sorry, I don't mean to interrupt. Second, that zero, none of the time that I personally spent defending an appeal which resulted in a published decision was compensable. And third, that even though my client, the trial court, and Mr. Hyman himself acknowledged that Judge Lombardo entered a money judgment, that post-judgment interest was not mandatory despite the clear language of Section 1303 of the Code of Civil Procedure. Are you saying that the judge determined that 1303 does not apply in divorce cases? I think that Judge Fizz erred by citing, I believe it was the Polsky case, which provides for discretion when attaching post-judgment interest to a judgment for dissolution of marriage. For example, property settlements, things of that nature. Right, but is there a difference between support, maintenance, and property when we're talking about interest? I think there is, Your Honor, and I think the starting point is Section 1303 of the Code, and what does that say? The language is unequivocal. Any judgment for money entered in this state shall bear interest. Well, I understand that there are decisions, Polsky and Finley, which our Supreme Court has subsequently limited the holding of, which provide for some discretion, although I would note that Finley was decided back before the Marriage Act was amended in 1987. And that's important, because in 1987 the Marriage Act was amended to provide that judgments for child support, or, strike that, for rearages of child support, every mispayment is a judgment. And I understand I did not cite this in the brief, I actually found the case last night, so I apologize. But there was a 2011 Illinois Supreme Court case. The question I have is, did the statute amend the concept of pre-judgment interest or post-judgment interest? The pre-judgment interest is based upon an amount due and owing, but not declared by a trial court to be capable of being levied against or executed upon. Vis-a-vis a judgment which is final and appealable, which results in a liability, results in the accumulation of interest from the date of the entry of the judgment, as opposed to Polsky, where the trial court, or I should say the appellate court, determined that the party to be charged interest should not be charged interest until such time as the judgment is sufficiently liquidated so they may be able to discharge it and terminate what would ordinarily be an amount of interest under the statute, i.e. why do you have to pay interest when you don't know how much money you owe? I think that's a valid pointer, Honor, and candidly I'm not coming before this court and didn't come before the trial court asking for pre-judgment interest because I agree that amount was not liquidable, it was not ascertainable until February of 2022 when Judge Lombardo ruled, and at that point he reduced the amount of money that Mr. Hyman owed to my clients to a specific dollar amount, $130,000 and change. Well, the point being then, if Judge Fiss is correct, people, typically women in divorce cases, can be precluded from obtaining or procuring 9% per year on the judgments that have actually been ordered and are enforceable. And it means that the party who the judgment is against is essentially earning 9% interest per M on the amount of money that they haven't satisfied and discharged in the money judgment in the divorce proceedings. Is that correct? I think that's correct. Does that sound like a violation of equal protection to you? To the extent that it would disproportionately affect one class of citizens over the other, absolutely. Does it seem to be inconsistent with the policy that attorney's fees are recoverable in the enforcement of a divorce order? It does, Your Honor. So they're entitled to attorney's fees, but they're not entitled to statutory interest on the attorney's fees, according to Judge Fiss. Well, we're not talking about statutory interest on fees. This is on the underlying property award, which Your Honor has affirmed. Right. The undisclosed assets. It's not an interest on attorney's fees. Right. Well, I'm saying that if the statute provides for attorney's fees to enforce a judgment, and Judge Fiss is correct in that he has the discretion to deny statutory interest, then if a court enters an order and a judgment with a liquidated amount of attorney's fees, the trial judge can still determine that statutory interest will not apply. I don't. It's a hypothetical. Sure. It's not what the facts are in this case. But I don't believe that even in that circumstance, Judge, the trial judge would have the discretion because of the plain language of Section 1303. There is no exception in 2-1303 for divorce for. My point is. Yes. Why would this legislature, in the concept or philosophical aspects of leveling the playing field, decide that attorney's fees are recoverable merely for enforcing a court order, but not include statutory interest on those fees once the order was entered within a liquidated amount? So the question, I understand, is why is there no interest? My question is, doesn't it appear to be contradictory to grant fees but not grant interest on the fees? If you make a parallel comparison between granting fees, which is rather abnormal or supernormal, if you are going to grant post-judgment interest, then why is it that you're supposed to be able to, at least in this case, deny statutory interest? I don't think that there is. Is there a contradiction or conflict in the philosophies therein? I would argue yes, Your Honor. I don't think that it is a, to the extent that there is discretion, I don't think that discretion makes sense in that circumstance. The whole point of both post-judgment interest statute and 508B is to put a party who prevails in a position where he or she would have been had the, call it bad acts, not occurred. Can I ask, what do I do with Finley though? And I understand Finley was child support. Finley was child support. Let me, you know, it says that equitable principles apply. And certainly the rationale in the holding doesn't apply anymore with respect to child support and now, as I understand it, maintenance. But the rationale that we basically look at a divorce court as a that does apply. And that was the rationale for saying that interest was in the discretion of the trial court. It's the ill and ice cream court. So it's not something for us to say, you know, they didn't mean what they said. Or we think based on the passage of time that a better rule might be something else. Just so you know, that's always there. This is an Illinois Supreme Court case. And it's been construed since then by other courts. And I'm looking at Kaufman in the first, that was a maintenance case. So in that, in 1998. So at that point, I can correct me if I'm wrong, but I think the statute changed after this case, after Kaufman. And it added maintenance. So you get prejudgment interest on child support. That was done first. And then later, excuse me, not prejudgment. Good. Thank you so much. But then later, maintenance. But Justice Rakowski says, hey, any appellate case that is saying that Finley doesn't apply, basically, is wrongheaded. And they construed Finley too narrowly. They limit Finley to the type of award that was at issue, which in Finley, it was child support, I think. A rear widget's on child support, I believe. Thank you very much. Rather, Finley's scope is broad. Clearly, the rules of equity apply to divorce proceedings. Clearly, the rules of equity that apply to divorce proceedings is an old, old rule of law. It is not the prerogative of the appellate court to limit a Supreme Court's decision. They quote Justice Quinlan's dissent in Morris. So that's there. It's not necessarily dispositive, but it's certainly something that's there. And then we come to the Polsky case, which is a judgment. I mean, it's not child support. It's not maintenance. So in that case, it's like ours. It's a judgment, and it says that interest is discretionary and it cites Coffman. So Coffman, you know, exquisitely examines Finley and says it's discretionary because divorce is not like other things. Divorce court and the people in divorce court, the lawyers and the are dealing with this intersection of all these areas of law, and they'll come up with creative ways to make fair determinations for people. And whether or not they're going to get interest on the judgment is something they leave to the trial court. How do we get around this? Well, again, I think that, and I apologize for not citing this in my brief. Again, I found this case last night. In 2011, the Supreme Court decided to, I'm going to butcher the name, WISOWATI, W-I-S-Z-O-W-A-T-Y case, which is it? Say it again. W-I-S-Z-O-W-A-T-Y, 239, Illinois 2nd, 483. And it limited Finley to the facts of that case, and I quote it, when governing statutes have plainly stated otherwise, unquote, the trial court does not have the discretion to deny post-judgment interest. Do they overturn? I don't think they overturn. They did not, but again, I think that Polsky involved a property settlement. And it was, that case is fairly sui generis. It was an interesting set of facts, very unique. But we're not dealing with a property settlement here. You know, if we were back in, again, 2000, whenever, when Mr. and Mrs. Hyman were getting divorced, and if these shares were disclosed, and the trial parties agreed, okay, he's going to pay her out over time for their value, they could have adjudicated or decided amongst themselves or put it before the trial court whether interest applied or not. But here we had a circumstance where there was a money judgment entered. And I would note, Mr. Hyman availed himself of the protections of Rule 305A. And he didn't put up $130,000. He put up $195,000. Why? Well, certainly the costs associated with the appeal are a docketing statement and maybe briefs, a couple hundred dollars. The reason for that extra $65,000 was post-judgment interest. Why else would he put up 1.5 times the amount of the judgment? Why else would he argue to the trial court? This is a money judgment. Is a money judgment in family law the same as a money judgment in any other? I believe it is, Your Honor. It's one thing if my client was awarded the shares themselves, then we're getting into more equitable remedies. Then I think it's a discretionary issue. This is a judgment. Judgment is a, you know, it gets back to the distinction between law and chancery. And that's what the Finley case talked about. That was before child was a legal remedy. It was more of a remedy in the nature of chancery. It was equitable. This is a judgment. My client could have taken it and recorded it. So we should read Finley narrowly. Absolutely. And I think that's what subsequent court cases have done. I understand that my time is almost up. I would like to briefly... Can I ask you a question, Justice McClure? I'm going to kind of shift, if you don't mind. I'm going to ask you a question.    Ten thousand. Ten thousand. Excuse me, because he thought that was reasonable. It's your position that those fees are mandatory? Under 508B? 508B. An award of fees is mandatory under 508B once Judge Fis made the finding that Mr. Hyman's conduct was without compelling cause or justification. So he does not have the ability to pay zero? As it relates to the appellate fees, if you look at the record, the Judge Fis' statements are simply in my discretion. I find that they are not appropriate unless he found that every single minute, every single dollar that we billed to successfully defend Judge Lombardo's ruling was unreasonable and unnecessary, a finding which I don't think, I would hope, your Honor, would not make, as I appeared before you and prevailed, then as reversible error is a matter of law. He did not have that discretion. Let's talk about the fees, the trial court fees, the $10,000. He said he took in certain factors in consideration, one of those factors, speaking to other attorneys who practiced in this area. I have, sorry. Is that evidence? Absolutely not. I think that should give your Honor serious concern that, bear in mind, Judge Fis did not preside over the trial. He did not see the work that went in. He reviewed the cold record. He reviewed the bills. He heard arguments. To have a judge who did not preside over the trial then talk to attorneys who are hopefully not involved in the trial, I think raises significant concerns. Ethically, can a judge speak to another attorney about a pending case? Without, that's a good question. Under the canons of judicial conduct, I would suppose yes. I know that judges are allowed to speak to their colleagues. I imagine if the judge didn't name names, didn't name parties, it would likely be kosher. But there's one thing for a judge to rely on his own experience. That's the Cain case. We're not going to dispute that. But to poll the class, attorneys who had no involvement in the case, no knowledge of what happened, I think that that is seriously concerning. I do want to raise one point counsel raised in his briefing. I want to concede that he's correct. We did not address Judge Fis' additional factual considerations on reconsideration. That was a problem that should not have been in our briefing. I want to apologize to your Honors for that. We should have addressed it. We didn't. That's a deficiency that's I want to be candid with your Honors. But I don't know that it matters. Because what we have here, again, my client sought $56,000 for over a year of litigation in the trial court that culminated in a two-day trial. $10,000 is 17% of that amount. Ten minutes out of 60 is 17%. So according to the trial courts, 83% of what my trial counsel did was not reasonable and not necessary. I don't understand how that is anything other than arbitrary. If you look at the record, Mr. Hyman's counsel, Mr. Sabbath, billed an hourly rate of $550 an hour. He would have had 18 hours to do everything that's happened in a year of litigation. My hourly rate was $450 an hour. That's in the record. That would have given Mr. Hyman 22 hours, or a little bit less than two hours a month, to prepare for and put on a two-day trial. Do you have any other questions? I do not. Can I ask a question? You're in the room. Okay. Here, we have fees are awarded in the divorce in the IMDMA for under 508B, fees and enforcement. True? That doesn't mention appeal fees, does it? It doesn't explicitly mention that, Your Honor. No. However, the statute... But here's the real question. 508A3 does, true? It does, absolutely. And that's where the court can allocate fees. It's just part of... 508... They're equitable. So does the inclusion of appellate fees in 508A3, this is the same statute, and the omission of it in 508B, does that tell us that the legislature didn't think fees on appeal for enforcement, whether that's wise or not, I make no comment. Sure. I do not think that reflects any decision by our legislature for two reasons. One, the plain language of Section 508B says, and I'm going to paraphrase this, fees incurred in a proceeding. The case law is abundantly clear that this appeal... But wouldn't it be soft fit to mention it in 508A3, though? I mean, I hear what you're saying. But then how do you get around the Clay case where fees were awarded for the successful defense of an appeal? And I will quote Clay, quote, an award for appellate fees is mandatory when a party willfully and contaminatiously fails to comply with an order such that he is subject to an award of 508B fees. There is nothing in Clay that imposes this artificial distinction between parties who successfully enforce awards for child support and parties who successfully enforce all the other myriad orders that are entered in divorce cases. There is nothing in 508B that says it. There's nothing in Clay that says it. And it's a nonsensical distinction. If the entire purpose of 508B, as Justice McClain said, is to level the playing field, put the party who has to go to court to obtain what is rightfully hers, to remove the burden of fees from her in the trial court, but say you've got to pay your own way at the appellate court, it makes no sense. And this would be the only fee-shifting statute in the state of Illinois that I'm aware of, even though none of them provide explicitly for appellate fees, just like Section 508B doesn't, where that distinction would be drawn. Why should a plaintiff who is suing her employer to collect back wages have to pay out of pocket to defend an appeal? Why should a victim of consumer fraud, who has his fees paid in the trial court, have to pay out of pocket to defend an appeal? Why should a divorced litigant who is deprived $130,000, who successfully prevails in the trial court, have to cut into that recovery on appeal just to obtain what she's owed? There is no logical, legal, or factual distinction to be drawn. And under the Clay case, I think the fees were absolutely mandatory here. And Judge Fiz's refusal to consider them was an exercise of discretionary authority. And I think that's what we're going to have to look at in the case. Thank you. Do I have an opportunity to make the bubble? Thank you, Your Honors. Mr. Schwab, you may proceed. Good morning, and may it please the Court. Rachel Hyman had two full hearings in front of Judge Fiz on fees. At the end of the first one, she also brought up this issue of interest that had not been raised in any of her pleadings, and she had not raised it during the first hearing. She had filed two separate petitions for fees. The Court, and I welcome Mr. Elster's late concession, in fact, the Court looked carefully at the billing statements and made findings on the record about the billing statements. They did? The trial court did? Did you think those were detailed findings regarding the billing statements? During the hearing on the motion to reconsider, the Court spent time going through entries, identifying specific entries by date and amount, and questioning why the billing was that it was. I think that's exactly the type of detailed review that somebody coming before this Court and saying, we need an evidentiary hearing, I think that's the hearing that they were getting at that time. Let's talk about Judge Fiz saying something to the effect that I talked to, I was speaking to other attorneys in this field about what to bill. Is that proper? Well, as Mr. Elster also conceded, the case law is very clear that the Court, in these sorts of findings, can draw on their own experience. I can't find anything Did Judge Fiz ever practice in family law? To my knowledge, the Judge Fiz has been on the bench for quite some time, but I think I would have to assume, as I think the case law instructs, that the Court that makes the finding is presumed to have the knowledge, the understanding of the law. He never said, I'm drawing on my own experiences. He said, I'm going to take certain into consideration, speaking to other attorneys in this field. Is that proper? Is that evidence? Well, I don't know that I can speak to whether this is a claim of malpractice or misconduct. No, I'm not saying that it is. I'm not saying it's malpractice. Well, and Justice Shostak, I think that's a valid concern you raise, but if I think you carefully at Judge Fiz's comments, what he says, and this is after he's made the determination, is that he speaks to other practitioners in the field about the kinds of fees generally charged in these kind of proceedings and what was reasonable. He says Doesn't Judge Fiz and any other judge in the state of Illinois have the opportunity to appoint an expert, I think it's 508L, and ask that expert to put in writing and read the billing statement and put in writing what they determine would be a proper, reasonable fee. Doesn't he have that opportunity? Well, he certainly has that opportunity. Wouldn't that be the way to go, as opposed to coming out on the bench and saying, I spoke to some attorneys, and I think $10,000 is reasonable? Well, respectfully, Justice Shostak, I think you're accepting a framing from the other side that is inaccurate and misstates the record. I think Justice Fiz was very clear on the record. He had reviewed the billing statements, all the evidence in front of him. He had made a determination about what he thought was a reasonable fee, and then he says, I went and spoke with others. They stated that they thought a reasonable amount would be between $5,000 and $10,000, and that, to me, confirmed that my judgment was correct. He used it as a he heard, in his experience, would have been recognized as reasonable. I think what you're asking makes sense, you know, when you look at great, massive class action fee actions, where they then come in with a lodestar method, and they have to do a complex determination of what a reasonable aggregate lodestar attorney fee rate and a reasonable. The problem in a matrimonial proceeding such as this is you're now, the attorney's fees are duplicating themselves and replicating themselves in the process of determining what a reasonable attorney's fee award is. That expert would have to be brought in. And so if the trial courts are going to be given discretion in these matters, I think the case law is really clear, and I could cite the Walters case that very clearly and emphatically says, in these kind of situations, it's the trial court, it's discretion to determine what the reasonable amount of fees is. Right, but isn't it incumbent upon the court to provide an explanation as to how they reach this figure? Well, and in this case, we have that explanation, and I will concede that at the trial court, at the trial, at the first hearing, Judge Fiss was fairly, I think the case law speaks of a clear and concise explanation, and Judge Fiss was very concise in what he felt was reasonable. Then they came back on reconsideration, and Judge Fiss cracked open the books, looked at the fee billing itself, and went through and said, I'm finding all these problems. There was this statement that was in the record in the trial court argument where Ms. Hyman's attorneys said, as we heard today, well, we think Mr. Hyman's attorneys might have billed more. And they said, well, I think she said the vast majority of the fees we're putting in front of you were for this matter. That is essentially a concession, that it was unclear from the billing statements which billing was attributable to this matter, which billing was attributable to the other matters that were before the court while that was going on. In our briefs, we identified that the billing came in to, you know, matter number one, matter number two. The numbers didn't add up. What were the other matters? Other matters were trial-related issues going on at the post-decree level about disputes on that. I wasn't involved in that, and I'm not in a position really to speak in detail to it, but it's certainly replete in the record that there were other matters going on. And so... But was there any evidence indicating that the billing related to things other than the enforcement of the order? Yes, Justice McClain, and that was in the argument before the court. And Mr. Sabbath certainly made the argument there were these other matters, and the billing included things like spoke-to-client, legal research, things that didn't specify specifically that the fees being claimed relating to this matter related to this matter. Well, there was a time period after that, wasn't there? I'm not sure... In between the original hearing, the most... Yes. When he looked at the billing, if they said spoke-to-client, there was a time frame in which he spoke-to-client, correct? That he billed for. I'm not sure I understand your question. I can answer to some extent if I'm... Okay, so if you say reviewed the record, prepared a motion, did they then go over and say three hours? There's billing statements. They have a description of the service rendered and a time entry.  But even in the original hearing on the fees, Mr. Sabbath was arguing the same thing. These different matters were going on concurrently with each other. Okay. And so the objection raised to the fees, and this is very common in any time you go to a fee hearing...  ...you have your billing, and if the billing doesn't say, did this specific work on this matter, that's a situation where frequently a judge is going to say, I can't award you fees for that if I can't see that it's cut and dry, that it's true. Is this logical or is it reasonable to conclude that the petition for fees covered 17% that related to the enforcement of the order, and the other 87% or 83% represented child custody and other matters? Is that what you're saying? Or duplicate, too. Well, I think that the framing of your question, with all due respect, Justice McLaren, is a good illustration of the dilemma that the trial courts face in these situations, because the attorneys' fees can be very high and relate to a lot of things, and the court has to assess from that what's going to be reasonable going forward to be awarding, pursuant to a fee-shifting provision, for these actions. And so you can say 17%, but if Ms. Hyman had had twice as many attorneys, you could come to court and say, wow, they only gave us 3% of our bill. Or some attorneys at Corkin, we certainly... Was there an added attach to the petition indicating by someone who would have the knowledge that the time slips related to this and other things? Or was it, no, this only relates to enforcing the order? Well, Justice, I think you raise a good question, because I certainly have combed the record and I didn't find the billing statements in the record on appeal. And as you know, it's the appellant who has the burden to present the court with all the records it needs for this court to review the case. Certainly, the affidavits that were provided with the two fee petitions did not go into any detail about the reasonableness. Certainly, if the court reviews the arguments of counsel, both at the initial fee hearing and the hearing on reconsideration, Ms. Hyman's counsel had the opportunity to say, I'm bringing these bills in here. Let's go through these. This is all for this matter. And anybody who's been in a fee petition, that's the way you have to do it. And instead, the arguments were high level. We think it's all reasonable. We think it's the same. The other side argued there was not a discernible... Maybe I'm editorializing, but there was not a discernible... Was there any converted argument or evidence that what you're saying is actually the case? Because it seems that if the trial court on reconsideration was disqualifying times without any evidence that they didn't relate to the fee question in issue, that seems to me to be rather speculative. Well, I think... Instead of asking the attorney, what was this timeslip for? Because it doesn't say it. In other words, I was a trial judge at one time, believe it or not. And I did rule and adjudicate attorney's fees. And not only did I ask questions about the timeslips, but so did opposing counsel. So if what you're suggesting is upon reconsideration, these were findings that the trial court made, on what basis was it made? The trial court made those findings on the basis of the evidence of the billing statements that were presented. At the original hearing, Mr. Hyman's counsel argued in detail for a couple of pages. It's in the record saying, for example, he sort of said, I'm not going to go through, but he was saying, on this date, these fees, it's not clear what they were done. On this date, there's two people, you know. So he goes through that. And I will point out that the case law is clear that the burden of proof is on the party seeking the fee award to demonstrate reasonableness. And at that initial hearing, there's no presentation by counsel for Ms. Hyman saying, here's our billing statements. Each of these is done. That's a choice of counsel. They come Let's move on, because you're going to run out of time. Is it within the discretion of the trial court to award appellate court fees? I think that the language of the statute is clear on that. That's been discussed already with Mr. Elster, and I can go back. So you think that the statute says no fees? The statute, when we're talking about 508, obviously, we're talking about 508A. The award of fees is discretionary. It says the court may award, and it itemizes in what types of proceedings. Under 508B, the statute clearly says fees shall be awarded, and it's mandatory. And it contains language about in a proceeding. Well, a proceeding, that word is used in 508A as part of the list that also lists appeals. I don't think any reasonable conclusion can be drawn from that, but that the legislature chose not to specify appeals in that. So the implication of that is that the statute says you must make some award, but it's within the trial court's discretion whether it would include appellate fees. You answered my first question. I'm sorry. I don't want to take over trying to move us along here. Do you have questions on that?  Post-judgment interests, let's talk about Polsky, Kaufman, within the discretion of the trial court or mandatory? I think the case law is clear. Certainly, there's a statute that, in applying outside of the matrimonial realm, that 213.02 or 3, makes, applies statutory interests, and we're all familiar with that statute in any case. But there's, from Finley on down, is a line of common law carve-outs in matrimonial cases. Finley derives the logic of making that common law exception for matrimonial cases based on the nature of matrimonial cases themselves, not simply on child support. And that is demonstrated in the Polsky case, where it's said quite clearly that, based on that long line of precedent, matrimonial cases, this kind of interest is discretionary on the trial court. And I think Justice Mullen made comments already that I agree with, that that goes to the nature of matrimonial proceedings, and it goes to the nature of the trial court, understanding the entire case, understanding the financial movements, and using the court's discretion to make that finding. I think it's important. Go ahead. I think it's important in this case also to see that, again, this is a case, and again, when the trial court is assessing the overall fees, that Ms. Hyman, Mr. Hyman came and made a motion for a stay. There was the 150 percent of the amount set aside. At no point is Ms. Hyman up there putting a pleading in front of the court saying, this is the amount of interest I want, this is how it should work, until the end of that first fee hearing, which is a hearing on fees where interest isn't even in front of the court, and is a sort of afterthought, says, well, what about statutory interest? Judge Fiss was well-informed of that. He said at the time, no, in my discretion, I'm not awarding it. And again, that's a discretionary call that a court makes in light of all of the  Did he give any reason for that? Excuse me? Did he give any reason for why he was not awarding any interest? No, at that point, he said, it's within my discretion, and I'm not awarding it. Okay. And I haven't seen anywhere in the record that that's, and again, it's the interesting thing about that is, well, it also wasn't argued. So his reasons were never elicited. It was brought up when they were talking about how to draft the order. And I was under the impression that the proper procedure is that the statutory interest applies unless, for some reason, the trial court decides that it's going to also, in addition to statutory post-judgment interest, impose pre-judgment interest, or if it's not going to allow the accumulation of the mandatory statutory interest, that there needs to be a negative statement, and there needs to be something that's reviewable for us to determine why this particular individual is not entitled to statutory interest, i.e., why is this individual being treated differently than virtually everyone else in the state of Illinois? Now, I believe Polsky talked in terms of the reason why statutory interest wasn't to was because at the time the judgment was entered, the amount of money due and owing was not ascertainable. It was not liquidated. And it determined that because it wasn't liquidated, the debtor, yes, the debtor, the judgment debtor should not be required in equity to pay for interest when he is not in a position to satisfy the judgment. In other words, when there is an ascertainable amount, then the judgment debtor is now put on notice that interest will accrue on that liquidated amount until such time as it's satisfied. So what does Polsky supposedly mean relative to this case where the amount of money was liquidated, your client knew how much money there was, I believe the record indicated that your client had the funds available in possibly your escrow account or the law firm's escrow account and could pay it relatively early. So why is it that the trial court exercised its discretion and removed from consideration the statutory interest? Well, Justice McCurdy, to respond to your question about Polsky, I read Polsky differently. My understanding of Polsky, this issue of interest came up at the end of the case, in the round numbers, and I'm ballparking the numbers, the guy's worth about $360 million and she's getting $180, she's getting 50% right down the middle, and then the trial court said, and I'm giving statutory interest, which is within the trial court's discretion, and it was at that point that Mr. Polsky came back and said, you're killing me, I've got time to pay this out, and the court said, this is how statutory interest works. If you want to hold on to the money, you're going to either pay the price or use the time value of money to beat the statutory rate. So I don't read Polsky as really — Well, because, wasn't it because he was given, the husband was charged with liquidating the assets, and it wasn't going to be easy to do. It wouldn't be easy to do, and it would, without the statutory rate as a backstop, he would be able to make arbitrage decisions about the amount of time, and so this was a reality check to prevent arbitrage on the way he liquidated or the time he took to liquidate that amount, but I don't read Polsky as really relating mainly to the issue of pre-judgment interest on any of these amounts. But Mr. Hyman held off, didn't turn over these assets, she discovered them, then he has to split them, the court splits them, gives her his half, her half, his half. Then he appeals it. And so, shouldn't he have to pay some interest on the judgment that he withheld from her, so to speak, until he came up on appeal? How is that equitable or reasonable? Well, I accept that that's a question for this court on review, depending on whether we're reviewing this as an abuse of discretion, which really hasn't even been argued here, but rather that it's de novo that the judge's error was a misinterpretation of the statute, and that in fact, Polsky in the entire line of cases that says that in matrimonial cases, this kind of interest is within the trial court's discretion. So that's the argument of the law. How is that de novo? Well, if it was de novo in terms of saying that we're interpreting the statute that requires statutory interest, I suppose it's purely as a matter of law, if this court is looking and saying, is that actually an existing and binding precedent for this court, all these cases saying that in matrimonial cases, interest is within the trial court's discretion. It's a separate question saying if it's within the trial court's discretion, did the trial court abuse its discretion? But I have not seen that issue raised here. That wasn't raised in the pleadings. It was simply posited. I'd like to point out just as we go, just for on that one case, Scafuri, that has the interesting language. As we pointed out in our brief, I think it's important to understand that Scafuri was not a finding that 1 percent interest was too low, as they represented, as Ms. Hyman's team represented in their brief. If you read Scafuri, Scafuri was an award of interest at the primary rate plus 1 percent. It was 2 percent, which was 1 percent higher than 9 percent. And it was back in 1990. Yes. But the parties in Scafuri seemed to assume that judgment, the judgment of interest statute applied. They never argued it did apply, at least that I saw. Well, and it doesn't. And I think the court addressed that in its holding specifically in saying it's within the trial court's discretion, but if you're going to do the discretion, you can't go above 9 percent. That's what I read in Scafuri. Right, right. In any case. And I certainly, I wrote it, and Scafuri didn't say that. At least it didn't intend to say that. It intended to say that statutory interest post-judgment is at 9 percent, period. So you get 9 percent, you don't get 8, you don't get 12 or 15. You get whatever the statutory rate is, 9, at least at that time. And it hasn't changed. But I just haven't seen that reflected in the common law or in rulings that have also upheld 1 percent award on dissolution judgments. Most recently, I don't have the case with me, but in the Rzdalski matter, certainly a 1 percent award of interest for a divorce judgment was upheld by this court. I think that that's a standing precedent. I'm not quite sure I follow what you're saying, because you're talking about 1 percent. Oh, I'm sorry. Scafuri was basically saying the amount of interest post-judgment is 9 percent. It's not more. It's not less. Now, I know that it doesn't say it's not less, because I wrote it, and it's not that affirmative statement or negative statement isn't in there. But that was the analysis at the time, which is, here's the statute. Was it complied with? No, it wasn't. Period.  Okay. What about you? Thank you. Thank you. Your time is up. And I don't think we have any more questions. Mr. Oster, you may proceed. I'll try to be brief, Anderson. We're getting into lunchtime here. I want to start with the question of interest. Now, Mr. Swapp talked about how there was no pleading on file. Well, I would direct Your Honor to page 280 of the report of proceedings. There was no pleading on file, because this issue didn't come up until immediately, immediately, next line in the transcript after page 280 of the report of proceedings. Judge Fisk rules, Mr. Savitz says, let's throw the $10,000 on to the money that we're holding, and we will distribute it to Ms. Hyman. So there was no opportunity to file a pleading. You know, if the issue had been properly raised, we would have filed a motion for turnover on the appeal bond. However, Mr. Savitz brought it up, and Judge Fisk ruled immediately on that. But again, that doesn't detract from the fact that interest under Section 1303 is mandatory. Now, what you didn't hear from Mr. Swapp was any explanation of why. Mr. Hyman should have enjoyed the benefit of this money from the date of judgment in 2015 until my client prevailed in 2022. Why should she be deprived of the time value of her own money that Section 1303 is designed to address? So whether you believe it's mandatory or whether you believe it's discretionary, you believe it's reasonable for her to receive interest? I think that Judge Fisk erred as a matter of law because I believe it's mandatory. Even if it is discretionary, I think that his off-the-cuff statement on not doing that does not represent an informed exercise of his discretion. Simply saying no, I'm not going to do it without giving any explanation, any reason, without any consideration of the inequity of that judgment, I believe warrants reversal. There is no cogent reason in the record, no cogent reason in the briefing, why Mr. Hyman should have deprived my client not only of the principal for seven years, but the interest after she prevailed. Is that an abuse of discretion or de novo? To the extent that he had the discretion to deny interest, which I don't believe he does, I believe it is an abuse of discretion because there was no exercise of discretion. It was just, no, I'm not going to do that. And much the same way how he decided the appellate fees. Again, I believe that under Section 508B, which applies to the entire proceeding, which the appeal was a part of the proceeding, appellate fees were mandatory. De novo review. To the extent that Judge Fisk had the discretion, simply saying no, I'm not going to do that without saying, Hyman, your fees were unreasonable. You billed too much. They were unnecessary. You've heard that a few times, haven't you? Maybe once or twice. Without even saying you could have not even filed a brief and prevailed. I don't think that would have been accurate, but without any analysis whatsoever. And again, what you didn't hear from Mr. Schwab was any discussion of the Clay case, which provides for 508B fees for the defense of appeal where a party acts in contravention of an order, or any discussion of the policy, why it makes no sense whatsoever to treat divorcing litigants who have to enforce orders to get what they're owed differently from any other party suing under a statute with a prevailing party fee petition. There is no explanation. Let me ask you this question. Do you believe that 9% is the mandatory amount of interest? I do. I believe that under 1303, judgment recovered in any court of this state shall draw interest at the rate of 9% per annum from the date of judgment. And I know that there are certain exceptions for consumer judgments. I believe in the last four or five years, our General Assembly amended Section 1303 to impose a lower interest, post-judgment interest rate on consumer judgments. But this isn't that. So when we're left with Scafuri and we're left with the plain language of the statute, which cannot be disregarded, 9% is what it is. But for Finley. But for Finley, which has been significantly curtailed by appellate courts and even by Wattie Supreme Court in 2011, and which I believe only applied to, you know, again, limited circumstances pre-1987 amendments to the statutes where you're dealing with a judgment in chancery rather than law. It kind of begs the question, what if Ms. Hyman, instead of coming into the divorce courts to file a motion to enforce, went down to the law division and filed a motion for breach of contract, or complaint for breach of contract, rather, said, I'm suing you. You owe me this. Under our MSA, you didn't perform. I want damages. Same facts, same evidence, same ruling, same judgments. I don't think there's any dispute that if she had gone the breach of contract route in a marital settlement agreement as a contract, that judgment would have earned 9% post-judgment interest without question. Why should she be treated any differently here? Again, no explanation. It is completely inequitable, unfair, and she should be entitled to the value of the money which she was owed, which she did not receive. Any other questions? Thank you very much, Your Honors. The case is under advisement. Hopefully, a decision will be issued at time for it to turn.